UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



AHMADZAI SEFATULLAH,

Petitioner,

v.

WILLIAM BARR, et al.,

Respondents.

19-CV-883
DECISION AND ORDER

Ahmadzai Sefatullah is a citizen of Afghanistan who has been detained for more than a year while he awaits judicial review of his final order of removal. On July 3, 2019, Sefatullah filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging the validity of his detention at the Buffalo Federal Detention Facility in Batavia, New York. Docket Item 1. On September 26, 2019, the respondents answered, Docket Item 7; and on October 24, Sefatullah replied, Docket Item 10.

For the reasons that follow, this Court grants Sefatullah's petition in part.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts, taken from the record, come largely from filings with the United States Department of Homeland Security, Immigration and Customs Enforcement ("DHS"). Sefatullah is a 24-year-old native and citizen of Afghanistan. Docket Item 7-2 at 1. He joined the Afghan Army in March 2011, transferred to the Afghan Airforce in 2015, and served as an air force pilot from 2017 to 2018. Docket Item 1 at 3. He was last admitted to the United States on August 15, 2018, as an A-2 nonimmigrant, so that he could attend military training at Meacham Field, Dallas-Fort

Worth, Texas. Docket Item 7-2 at 2. Sefatullah's visa authorized him to stay in the United States for six months. *Id.*

On October 3, 2018, Sefatullah did not appear for his scheduled training, and he was deemed an absconder. *Id.* Approximately two weeks later, on October 14, 2018, Sefatullah was apprehended by United States Border Patrol agents in Moers, New York. *Id.* at 3-4. Sefatullah stated that he intended to cross the border into Canada and seek asylum there. *Id.* That same day, Sefatullah was charged with being a nonimmigrant who failed to maintain or comply with the conditions of the nonimmigrant status under which he was admitted and therefore subject to removal from the United States under 8 U.S.C. § 1227(a)(1)(C)(i). *Id.* at 8-9. DHS further determined that Sefatullah would be detained pending a final administrative determination of his immigration case. *Id.* at 5. Sefatullah requested in writing that an Immigration Judge ("IJ") review DHS's custody determination. *Id.*

On January 15, 2019, through counsel, Sefatullah withdrew his request for a bond hearing. *Id.* at 13. On March 5, 2019, he filed a Form I-589, "Application for Asylum and Withholding of Removal." *Id.* at 28. He appeared for a hearing before an IJ on April 24, 2019. *Id.* at 27-39. That same day, the IJ issued an oral decision denying Sefatullah's application and ordered him removed. *Id.* at 19-20, 37-38. On May 14, 2019, the Board of Immigration Appeals ("BIA") received notice of Sefatullah's appeal from the IJ's order. *Id.* at 40. That appeal remains pending. Docket Item 7-1 at 4.

Sefatullah currently is held at the Buffalo Federal Detention Facility in Batavia, New York. *Id.* at 4. At this point, he has been detained pending final determination of his removability for more than a year.

## DISCUSSION

28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). The government maintains that Sefatullah's detention is valid under 8 U.S.C. § 1226(a) and does not violate his due process rights. Docket Item 8 at 12-19. Sefatullah makes three arguments to the contrary. Docket item 1. First, he claims that his detention violates 28 U.S.C. § 1231(a)(6) as interpreted by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001). *Id.* at 7. Second, he argues that his detention "in excess of six months" violates his Fifth Amendment right to substantive due process "through a deprivation of the core liberty interest in freedom from bodily restraint." *Id.* Third, he argues that his detention for more than six months without a meaningful review violates his Fifth Amendment right to procedural due process. *Id.* at 8.

Because Sefatullah is proceeding *pro se*, this Court holds his submissions "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

## I.  STATUTORY CHALLENGE

This Court begins by considering the statutory basis for Sefatullah's detention in order to evaluate his first challenge—that his continued detention violates 8 U.S.C. § 1231. The government contends that Sefatullah is detained under 8 U.S.C § 1226(a). Docket Item 8 at 6. Sefatullah contends that he is detained under 8 U.S.C. § 1231. Docket Item 1 at 7.

"Broadly speaking, section 1226 governs the detention of immigrants who are not immediately deportable." *Hechavarria v. Sessions*, 891 F.3d 49, 57 (2d Cir. 2018). Section 1231, on the other hand, "addresses the 'removal period' for immigrants facing deportation." *Id.* at 53. "[T]he 'removal period' [is] the term used in the statute to describe the 90-day period following an order of removal during which 'the Attorney General shall remove the alien.'" *Id.* at 54 (quoting 8 U.S.C. § 1231(a)(1)(A)).

> The statute explicitly defines the beginning of the removal period as occurring "on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement."

*Id.* at 54-55 (quoting 8 U.S.C. § 1231(a)(1)(B)).

In this case, Sefatullah has appealed the IJ's removal order to the BIA. Accordingly, DHS has not yet issued a final order of removal. That places his continued detention squarely beyond the reach of section 1231(a)(1)(B)(i) and within the parameters of section 1226. Because Sefatullah is not detained under section 1231, this Court rejects his argument that his detention violates section 1231(a)(6) as interpreted by the Supreme Court in *Zadvydas*.

## II. DUE PROCESS

Sefatullah also argues that his continued detention violates the Due Process Clause. The Fifth Amendment's Due Process Clause prohibits the federal government from depriving any "person . . . of . . . liberty without due process of law." U.S. Const. amend. V. The Supreme Court "has held that the Due Process Clause protects

4

individuals against two types of government action." *United States v. Salerno*, 481 U.S. 739, 746 (1987). "So called 'substantive due process' prevents the government from engaging in conduct that shocks the conscience, . . . or interferes with rights implicit in the concept of ordered liberty." *Id.* (citations omitted). "When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner." *Id.* "This requirement has traditionally been referred to as 'procedural' due process." *Id.*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. "[G]overnment detention violates that Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections . . . or, in certain special and narrow nonpunitive circumstances, . . . where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id.* (emphasis in original) (citations omitted). Other than those unique, special, and narrow circumstances, "[o]nly a jury, acting on proof beyond a reasonable doubt, may take a person's liberty. That promise stands as one of the Constitution's most vital protections against arbitrary government." *United States v. Haymond*, 139 S. Ct. 2369, 2373 (2019).

"Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments." *Plyler v. Doe*, 457 U.S. 202, 210 (1982); *see also Shaughnessey v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1954) ("It is true that aliens who have

once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law."). At the same time, Congress has "broad power over naturalization and immigration, [permitting it to] make[ ] rules that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 521 (2003) (quoting *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976)).

### A. Substantive Due Process

Sefatullah argues that his detention violates his right to substantive due process. Docket Item 1 at 7. He has been detained by DHS since October 14, 2018—more than a year. But this Court cannot say that detention that long violates due process. *See Sanusi v. I.N.S.*, 100 F. App'x 49, 51 (2d Cir. 2004) (summary order) (determining that six-year detention did not violate due process). Indeed, detention under section 1226 may serve the government's compelling interests in both "preser[ving] the government's ability to later carry out its broader responsibilities over immigration matters," *Doherty v. Thornburgh*, 943 F.2d 204, 211 (2d Cir. 1991), and preventing crime by arrestees who pose a danger to the safety of the community, *see Salerno*, 481 U.S. at 749. Although there comes a time when the length of an alien's detention pending removal violates due process regardless of the procedural protections afforded, *see Salerno*, 481 U.S. at 747 n.4, that time has not yet come here.

## B.   Procedural Due Process[1]

Sefatullah also challenges the procedural safeguards that apply to his continued detention. Docket Item 1 at 8. The Due Process Clause is not offended by the mandatory detention of aliens for the "*brief period necessary* for their removal proceedings," Demore, 538 U.S. at 513 (emphasis added), but "a lawful permanent resident alien . . . could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention bec[omes] unreasonable or unjustified," id. at 532 (Kennedy, J., concurring).

For that reason, this Court "has evaluated procedural due process challenges to immigration detention with a two-step inquiry." Hemans v. Searls, 2019 WL 955353, at *5 (W.D.N.Y. Feb. 27, 2019). "As the first step, the Court considers whether the alien's detention has been unreasonably prolonged." Id. "If it has not, then there is no procedural due process violation." Id. "But if it has, the Court proceeds to step two and 'identifies the specific dictates of due process.'" Id. (quoting Mathews v. Eldridge, 424 U.S. 319, 335 (1976)). If the government has not provided the procedural safeguards that are due, then the alien's continued detention violates the Due Process Clause. Id.

---

[1] The government argues that this Court should dismiss Sefatullah's petition for failure to exhaust administrative remedies. See Docket Item 8 at 9-12. This Court disagrees. "[E]xhaustion is excused here because any administrative appeal would have been futile and unable to address [the alien's] substantial constitutional claims." Joseph v. Decker, 2018 WL 6075067, at *6 (S.D.N.Y. Nov. 21, 2018). As this Court has explained, in "a 'typical' [section] 1226(a) bond hearing, [the alien] must prove 'to the satisfaction of the immigration judge' that he 'does not present a danger' before the immigration judge could even consider whether conditions of supervision might suffice to protect the public." Hechavarria v. Sessions, 2018 WL 5776421, at *7 (W.D.N.Y. Nov. 2, 2018) (emphasis in original) (quoting 8 C.F.R. § 1236.1(c)(8)). Because neither an IJ nor the BIA has jurisdiction to adjudicate the constitutionality of that burden, see id., giving Sefatullah a "typical" section 1226(a) bond hearing would not remedy any due process violation, and requiring him to seek a hearing before an IJ would be futile.

### 1. Sefatullah's Detention

"[C]ourts examine each individual's detention circumstance to determine whether it has become 'unreasonable or unjustified.'" *Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018) (quoting *Demore*, 538 U.S. at 532 (Kennedy, J., concurring)). Although there is no bright-line rule in determining whether detention has become unreasonably prolonged, "courts become extremely wary" of concluding that detention is not unreasonably prolonged "as detention continues past a year." *See Yagao v. Figueroa*, 2019 WL 1429582, at *2 (S.D. Cal. Mar. 29, 2019) (quoting *Muse v. Sessions*, 2018 WL 4466052, at *4 (D. Minn. Sept. 18, 2018)); *see also Reid v. Donelan*, 2019 WL 2959085, at *9-*10 (D. Mass. July 9, 2019) (explaining that "detention is likely to be unreasonable if it lasts for more than one year during removal proceedings before the agency, excluding any delays due to the alien's dilatory tactics," but that "[t]his one-year period is not a bright line").

"[W]hen weighing the lawfulness of continued detention of an alien under the Due Process Clause," several factors determine whether detention is unreasonably prolonged. *Jamal A. v. Whitaker*, 358 F. Supp. 3d. 853, 858-59 (D. Minn. 2019). This Court, for example, has considered "(1) the total length of detention to date; (2) the conditions of detention; (3) delays in the removal proceedings caused by the parties; and (4) the likelihood that the removal proceedings will result in a final order of removal." *Hemans*, 2019 WL 955353, at *6.

First, and most important, courts consider the length of detention. Sefatullah has been in DHS custody since October 14, 2018—about thirteen months. This factor weighs in Sefatullah's favor. Because Sefatullah's detention has surpassed the one-year mark at which time "detention is likely to be unreasonable," *Reid*, 2019 WL

8

2959085, at *9, this factor supports his argument that his detention without an individualized hearing has been unreasonably prolonged.

Second, courts consider the conditions of detention. Whether "the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention" factors into the reasonableness of Sefatullah's detention. *Sajous v. Decker*, 2018 WL 2357266, at *11 (S.D.N.Y. May 23, 2018). "The more that the conditions under which the alien is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Muse*, 2018 WL 4466052, at *5.

The government has submitted the declaration of a Buffalo Federal Detention Facility employee regarding the conditions of Sefatullah's confinement. *See* Docket Item 7-3. In that declaration, the government avers that the facility is unlike a prison because "most persons . . are not locked in a cell," detainees "do not face the same level of restrictions typical for someone held at a prison," and detainees "ordinarily may move throughout the [facility] without being required to wear handcuffs or legcuffs." *Id.* at 3-4. "Six of the dorm units are open-dorm style," but three others—for detainees with criminal histories or female detainees—have cell doors that close at night. *Id.* at 3. And "persons held at [the facility are] required to wear . . . restraints . . . when being booked in or booked out" or when they are "facing discipline [and are] brought to the Special Housing Unit ('SHU')." *Id.* at 4.

Because of the cells, restraints, and discipline in the SHU, conditions at the Buffalo Federal Detention Facility certainly "resemble penal confinement" for at least some persons detained there. *Muse*, 2018 WL 4466052, at *5. Nevertheless, because


the record does not contain facts about the particular conditions of Sefatullah's confinement, this Court cannot say that this factor weighs in either party's favor.

Third, courts consider whether the detainee has prolonged his own detention. The Second Circuit has indicated that this factor weighs against an immigrant who has "substantially prolonged his stay by abusing the processes provided to him" but not "an immigrant who simply made use of the statutorily permitted appeals process." *Hechavarria*, 891 F.3d at 56 n.6 (quoting *Nken v. Holder*, 556 U.S. 418, 436 (2009)). As the Sixth Circuit has noted, "appeals and petitions for relief are to be expected as a natural part of the process. An alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him." *Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003) (cited in *Hechavarria*, 891 F.3d at 56 n.6). Indeed,

> although an alien may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take. The mere fact that an alien has sought relief from deportation does not authorize the [government] to drag its heels indefinitely in making a decision. The entire process, not merely the original deportation hearing, is subject to the constitutional requirement of reasonableness.

*Id.*

Here, Sefatullah was taken into custody on October 14, 2018. Docket Item 7-2 at 5-6. On October 24, 2018, DHS served Sefatullah with a notice to appear before an IJ for a removal hearing scheduled for January 31, 2019. *Id.* at 9-10. On February 19, 2019, Sefatullah indicated that he intended to apply for asylum and withholding of removal, and his removal hearing was adjourned to April 24, 2019. *Id.* at 17. On March 5, 2019, Sefatullah applied for asylum, *id.* at 28, and on April 24, 2019, he appeared for a removal hearing before an IJ, *id.* at 27-39. That same day, the IJ issued an oral

decision denying Sefatullah's application and ordered him removed. *Id.* at 19-20, 37-38. On May 14, 2019, the BIA received notice of Sefatullah's appeal from the IJ's order. *Id.* at 40. That appeal remains pending. Docket Item 7-1 at 4.

Although Sefatullah has caused some of the delay in his removal, this Court does not find that he has "abus[ed] the processes provided to him." *See Hechavarria*, 891 F.3d at 56 n.6 (quoting *Nken*, 556 U.S. at 436). Since early this year, he has done no more than apply for asylum and appeal the IJ's adverse decision to the BIA. On the other hand, the BIA already has taken about 6 months to act on that appeal. In other words, Sefatullah has "simply made use of the statutorily permitted appeals process," *Hechavarria*, 891 F.3d at 56 n.6, and could not have taken any actions to speed up that process. Therefore, the third factor weighs in his favor.

Finally, courts consider the likelihood that the removal proceedings will result in a final order of removal. This Court declines to wade too deeply into the merits of Sefatullah's claims pending before the BIA; in any event, neither side has included much about the substantive issues in its briefs to this Court.

After weighing all these factors, this Court finds that Sefatullah's detention has been unreasonably prolonged. Therefore, this Court turns to the second step of the two-part inquiry to determine what remedy his unreasonably-prolonged detention demands.

### C. The Process Due to Sefatullah

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[I]dentification of the specific dictates

11

of due process generally requires consideration of three distinct factors," *id.* at 335, namely: "(A) the private interest affected; (B) the risk of erroneous deprivation of that interest through the procedures used; and (C) the governmental interest at stake." *Nelson v. Colorado*, 137 S. Ct. 1249, 1255 (2017). Here, that analysis leads to the conclusion that Sefatullah's continued detention without an individualized hearing, at which the government must justify his continued detention by clear and convincing evidence, fails to "comport with the 'fundamental fairness' demanded by the Due Process Clause." *See Schall v. Martin*, 467 U.S. 253, 263 (1984).

Sefatullah's interest in his freedom pending the conclusion of his removal proceedings deserves great "weight and gravity." *Addington v. Texas*, 441 U.S. 418, 427 (1979). Sefatullah has an obvious interest in his "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint." *Zadvydas*, 533 U.S. at 690. Moreover, while "[t]he private interest here is not liberty in the abstract, but liberty *in the United States*," *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999) (emphasis in original), Sefatullah has not conceded his deportability, and the resolution of that issue remains pending before the BIA. In fact, his interest in liberty *in the United States* must indeed be strong for him to subject herself to unreasonably-prolonged detention while contesting his deportability. *See Fremont v. Barr*, 2019 WL 1471006, at *6 n.7 (W.D.N.Y. Apr. 3, 2019).

This Court recognizes that the government's interest in detaining Sefatullah also may be strong. Ordinarily, the government's interests include the risks of flight and danger to the community. *See, e.g.*, 8 C.F.R. § 1236.1(c)(8). Here, the government has not argued that Sefatullah presents a danger to the community or a flight risk.

Nevertheless, this Court agrees—as a general matter, at least—that the government's interests may well be "legitimate and compelling," *Salerno*, 481 U.S. at 752.

Turning to the procedures used thus far in this case, Sefatullah has not received any individualized custody hearing before an IJ. Docket Item 7-2 at 5, 13. This Court accordingly finds that there is a significant risk of an erroneous deprivation to Sefatullah's liberty interests. Now that Sefatullah's detention has become unreasonably prolonged, due process requires *some* opportunity to be heard "at a meaningful time and in a meaningful manner," *Armstrong*, 380 U.S. at 552, to challenge the statute's assumptions as applied to him.

An opportunity to be heard in a meaningful manner necessarily requires a hearing that "satisfies the constitutional minimum of fundamental fairness." *Santosky v. Kramer*, 455 U.S. 745, 756 n.8 (1982) (citation omitted). When the government seeks the civil detention of a person to effect a compelling regulatory purpose, it must show by clear and convincing evidence that such detention is necessary to serve the compelling interest. *See Foucha v. Louisiana*, 504 U.S. 71, 81-83 (1992); *Addington*, 441 U.S. at 432-33; *see also Santosky*, 455 U.S. at 756 (explaining that the "clear and convincing evidence" standard applies "when the individual interests at stake in a . . . proceeding are both 'particularly important' and 'more substantial than mere loss of money'" (quoting *Addington*, 441 U.S. at 424)). That standard applies equally here.

To sustain the prolonged detention of an alien subject to removal proceedings based on its general interests in immigration detention, the "[g]overnment [is] required, in a 'full-blown adversary hearing,' to convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of

the community or any person," *Foucha*, 504 U.S. at 81 (quoting *Salerno*, 481 U.S. at 751), or ensure that the alien will appear for any future proceeding.[2] This requires consideration of less restrictive alternatives to detention. *See id.*; *cf. United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816 (2000) ("When a plausible, less restrictive alternative is offered to a" regulation burdening a constitutional right, "it is the Government's obligation to prove that the alternative will be ineffective to achieve its goals.").

Sefatullah's section 1226(a) detention has been unreasonably prolonged. Because section 1226(a) does not require an individualized hearing where the government must demonstrate by clear and convincing evidence that no conditions of release can reasonably serve the government's compelling regulatory interests in detaining him, it is unconstitutional as applied to him. As such, his continued detention violates the Due Process Clause. Sefatullah must be released unless, no later than **fourteen days from the date of this decision**, the government demonstrates by clear and convincing evidence before a neutral decision maker that Sefatullah's continued detention is necessary to serve a compelling regulatory purpose—such as preventing flight or protecting others or the community. The decision maker also must consider—and must address in any decision—whether there is clear and convincing evidence that there are no less-restrictive alternatives to physical detention, including release on bond

---

[2] As this Court explained in *Hemans*, 2019 WL 955353, at *8 n.7, a pretrial detainee's right to a speedy trial distinguishes the interests supporting the evidentiary standard traditionally applicable to flight-risk determinations for pretrial detention purposes from what is required after an unreasonably-prolonged immigration detention.

14

in an amount the petitioner can reasonably afford, with or without conditions, that would also reasonably address those same regulatory purposes.

## CONCLUSION

For the reasons stated above, Sefatullah's petition, Docket Item 1, is GRANTED in part. **Within fourteen calendar days of the date of this decision**, the government must release Sefatullah from detention unless a neutral decision maker conducts an individualized hearing to determine whether his continued detention is justified. At any such hearing, the government has the burden of demonstrating by clear and convincing evidence that Sefatullah's continued detention is necessary to serve a compelling regulatory purpose, such as protecting against danger to the community or risk of flight. Whether detention is necessary to serve a compelling regulatory purpose requires consideration of whether a less-restrictive alternative to detention would also address the government's interests. In other words, the decision maker must find that no condition or combination of conditions of release can reasonably ensure Sefatullah's appearance and the safety of the community—that is, even with conditions, Sefatullah presents an identified and articulable risk of flight or a threat to an individual or the community.

SO ORDERED.

Dated: November 13, 2019
Buffalo, New York

_____
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE

15